# Exhibit A

1st Amended

SUM-100

* 1st Amended

# SUMMONS
# (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SAN MATEO COUNTY
MAY 26 2015
Clerk of the Superior Court
By ______ DEPUTY CLERK

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

CAVALRY SPV I, LLC, CREDITOR IUSTUS ET REMEDIUM, LLC, aka CIR LAW FIRM, and DOES 1-5

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

WILLIAM GUNKEL and all others similarly situated

NOTICE! You have been sued The court may decide against you without your being heard unless you respond within 30 days Read the information below

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff A letter or phone call will not protect you Your written response must be in proper legal form if you want the court to hear your case There may be a court form that you can use for your response You can find these court forms and more information at the California Courts Online Self-Help Center (*www courtinfo ca gov/selfhelp*), your county law library, or the courthouse nearest you If you cannot pay the filing fee, ask the court clerk for a fee waiver form If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court

There are other legal requirements You may want to call an attorney right away If you do not know an attorney, you may want to call an attorney referral service If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program You can locate these nonprofit groups at the California Legal Services Web site (*www lawhelpcalifornia org*), the California Courts Online Self-Help Center (*www courtinfo ca gov/selfhelp*), or by contacting your local court or county bar association NOTE The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case The court's lien must be paid before the court will dismiss the case

*¡AVISO! Lo han demandado Si no responde dentro de 30 dias, la corte puede decidir en su contra sin escuchar su version Lea la informacion a continuacion*

*Tiene 30 DIAS DE CALENDARIO despues de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante Una carta o una llamada telefonica no lo protegen Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte Es posible que haya un formulario que usted pueda usar para su respuesta Puede encontrar estos formularios de la corte y mas informacion en el Centro de Ayuda de las Cortes de California (www sucorte ca gov), en la biblioteca de leyes de su condado o en la corte que le quede mas cerca Si no puede pagar la cuota de presentacion, pida al secretario de la corte que le de un formulario de exencion de pago de cuotas Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podra quitar su sueldo, dinero y bienes sin más advertencia*

*Hay otros requisitos legales Es recomendable que llame a un abogado inmediatamente Si no conoce a un abogado, puede llamar a un servicio de remision a abogados Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www lawhelpcalifornia org), en el Centro de Ayuda de las Cortes de California, (www sucorte ca gov) o poniendose en contacto con la corte o el colegio de abogados locales AVISO Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperacion de $10,000 o mas de valor recibida mediante un acuerdo o una concesion de arbitraje en un caso de derecho civil Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso*

9-17-15 CMC

The name and address of the court is
*(El nombre y dirección de la corte es)* San Mateo Superior Court
400 County Center, 1st Floor, Room A
Redwood City, CA 94063

CASE NUMBER *(Numero del Caso)*: CIV 533643

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is
*(El nombre, la dirección y el número de telefono del abogado del demandante, o del demandante que no tiene abogado, es)*
Mark T Clausen (CSB #196721) 818-A College Ave, Santa Rosa CA 95404

DATE *(Fecha)* MAY 26 2015 JOHN C. FITTON Clerk, by *(Secretario)* ______ , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010) )*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010))*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN MATEO

**NOTICE TO THE PERSON SERVED** You are served

1 ☐ as an individual defendant
2 ☐ as the person sued under the fictitious name of *(specify)*
3 ☐ on behalf of *(specify)*

under ☐ CCP 416 10 (corporation) ☐ CCP 416 60 (minor)
☐ CCP 416 20 (defunct corporation) ☐ CCP 416 70 (conservatee)
☐ CCP 416 40 (association or partnership) ☐ CCP 416 90 (authorized person)
☐ other *(specify)*

4 ☐ by personal delivery on *(date)*

Mark T Clausen (Calif SB# 196721)
Law Office of Murray Zatman
818-A College Avenue
Santa Rosa, California 95404
Telephone. (707) 542-9700
Cellular· (707) 235-3663
Facsimile (707) 542-9713
Email MarkTClausen@yahoo com

Attorney for Plaintiff William Gunkel

FILED
SAN MATEO COUNTY
MAY 2 6 2015
Clerk of the Superior Court
By ________ DEPUTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO**

**(An Unlimited Civil Action)**

WILLIAM GUNKEL and all others similarly situated,

Plaintiff,

vs.

CAVALRY SPV I, LLC; CREDITOR IUSTUS ET REMEDIUM, LLC, aka CIR LAW FIRM, and DOES 1-5,

Defendants.
_______________________________/

Case No CIV 533643

FIRST AMENDED COMPLAINT

Comes now plaintiff William Gunkel who hereby alleges, claims and prays as follows.

**INTRODUCTION**

1. This is a putative class action lawsuit by plaintiff William Gunkel (plaintiff or GUNKEL) against defendants Cavalry SPV I, LLC (CAVARLY), a debt collection company, and Creditor Iustus et Remedium[1], LLC aka CIR Law Firm (CIR), a debt collection company and a law firm specializing in debt collection. The action arises from an underlying limited civil credit card debt collection lawsuit which CIR filed and prosecuted on behalf of CAVALRY in San Mateo County Superior Court, *Cavalry SPV I, LLC v William Gunkel*, Case No. CLG-516461 (the underlying case). The underlying case was filed on August 11, 2012 and voluntarily dismissed on April 16, 2015

2 Plaintiff claims that communications from CAVALRY and CIR and pleadings filed and discovery responses served by them in the course of the underlying lawsuit were false, misleading and deceptive and were designed to secure an unjust settlement favorable to CAVALRY and CIR

---

[1]Latin which translates to "creditor rights and remedies "

in a sum in excess of that which one might reasonably pay if the true facts were known Plaintiff claims CAVALARY and CIR engage in similar conduct on a systematic basis in other limited civil debt collection cases throughout California On behalf of himself and the putative class and for the sole purpose of serving the public interest, plaintiff seeks statutory penalties for defendants' violation of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), Civil Code section 1788, et seq , and injunctive relief for defendants' violation of the Unfair Competition Law (UCL), Business & Professions Code section 17200, et seq

**PARTIES**

3 Plaintiff GUNKEL is an individual over the age of 18 and a resident of the City and County of San Francisco, State of California GUNKEL is a "consumer" within the meaning of the Rosenthal Act, Civil Code section 1788 2, as he is a natural person who was obligated or alleged to be obligated to pay a debt

4 Defendant CAVALRY is a limited liability company located and doing business in the State of California, including the City and County of San Francisco CAVALRY buys charged off debts on the secondary market, purchasing delinquent accounts for pennies, or fractions of a penny, on the dollar To attempt to collect the debts, CAVALRY sends collection letters and makes phone calls to the alleged debtor, and if that fails to generate payment, files a lawsuit– most commonly a limited civil case in which the maximum claim is $25,000 and most collection cases claim less than $10,000 CAVALRY is a debt collector within the meaning of Civil Code section 1788 2(c) because the principal purpose of its business is the collection of debts and it regularly collects, or attempts to collect, debts owed or due or asserted to be owed or due by another CAVLARY was the named plaintiff in the underlying case brought against GUNKEL in an attempt to collect a debt which GUNKEL allegedly owed. CAVALRY files and prosecutes many hundreds, if not thousands of similar lawsuits each year in California, including many cases filed in this court

5 Defendant CIR is a debt collection company and a law firm specializing exclusively in debt collection CIR is located and does business in the State of California, including the City and County of San Francisco CIR frequently represents CAVALRY and other debt collection

companies in limited civil debt collection cases in California Though CIR is a law firm which employs attorneys, its primary business is debt collection, not the practice of law, and it employs a significant number of non-attorneys whose primary, if not exclusive duty is to contact and communicate with debtors, and alleged debtors, in an attempt to collect a debt CIR is a debt collector within the meaning of Civil Code section 1788 2(c) because the principal purpose of its business is the collection of debts and it regularly collects, or attempts to collect, debts owed or due or asserted to be owed or due by another CIR represented CAVALRY in the underlying case against GUNKEL which was brought to collect a debt he allegedly owed On behalf of CAVALRY and other debt collection companies, CIR files and prosecutes thousands of limited civil debt collection cases each year in California, including many cases filed in this court

6 Plaintiff is ignorant of the true names and capacities of all the defendants sued herein as Does 1-5, inclusive, and therefore sue these defendants by such fictitious names Plaintiff will amend this complaint to allege the true names and capacities of Does 1-5 when fully ascertained Plaintiff is informed and believes and thereon alleges that Does 1 through 5 are responsible in some manner for the events and occurrences alleged herein, and that plaintiff's injuries and those of other individuals similarly situated to plaintiff were proximately caused by those defendants

7 Plaintiff is informed and believes and thereon alleges that the defendants acted in concert and ratified and approved the actions of the other for purposes of illicit profit, and that each defendant is the agent, servant or representative of the other such that each is liable for the actions of the other as herein-described

**GENERAL ALLEGATIONS**

8 On behalf of Equable Ascent Financial, LLC (EQUABLE), a debt collection company that is apparently now defunct, CIR filed the underlying case against GUNKEL on September 11, 2012 The complaint alleged that GUNKEL owed a credit card debt of $8,676 20 which originated with Chase Bank and had been sold and assigned "downstream"[2] to various companies and ultimately to EQUABLE

[2]Plaintiff's word– not found in the complaint in the underlying case

9 Representing himself, GUNKEL filed an answer denying liability on September 27, 2012

10 On a precise date unknown in 2013, EQUABLE sold and assigned all of its debt collection accounts to CAVALRY However, CIR continued to prosecute the underlying case in the name of EQUABLE for nearly a year, all the while send collection letters to GUNKEL in the name of CAVARLY

11 On August 6, 2013, on behalf of CAVALRY, CIR mailed a collection letter to GUNKEL (A true copy of the letter is attached as Exhibit 1 ) The letter from CIR listed CAVALRY as "client" and crypticly stated in small print "(ORG EAG CHASE)" – which presumably was intended to convey that the original lender was Chase Bank, but which an unsophisticated lay debtor such as GUNKEL could not be expected to decipher and understand The letter did not indicate that CAVALRY had purchased the debt from EQUABLE, and it appears no previous letters or other communications directed to GUNKLE contained that information or otherwise informed him of the alleged debt transfer from EQUABLE to CAVALRY Nonetheless, GUNKEL surmised from the letter that CIR was claiming CAVALRY owned the debt The debt collection letter listed the balance due as $8,676 20– the same amount alleged in the complaint filed in September 2012

12 An amended complaint was filed by CIR in the underlying case on April 4, 2014 naming CAVALRY as plaintiff therein in place of EQUABLE In the amended complaint, CAVALRY alleged it had purchased GUNKEL's debt from EQUABLE. The amended complaint listed the balance due as $8,676 20– the same amount alleged in the complaint filed in September 2012

13 Representing himself, GUNKEL filed an answer to the amended complaint, denying liability, on April 9, 2014

14 GUNKEL retained counsel, Mark T Clausen, who substituted into the underlying case on June 3, 2014

15 On February 23, 2015, on behalf of CAVALRY, CIR directed a letter to GUNKEL's attorney, Mark T Clausen, offering to settle the case (A true copy of the letter is attached as

Exhibit 2 ) The letter falsely listed the amount of the debt as $10,030 76– an increase of $1,374 56 above the amount stated in the original complaint filed in September 2012, the collection letter mailed in August 2013 and the amended complaint filed in April 2014 The collection letter did not explain the reason for the significant increase in the amount of the debt claimed to be due, and that increase cannot now be explained in fact or law as anything other than a false representation of the amount of the debt then due The purpose of the false increase in the amount of the debt was to make CIR and CAVALRY's settlement offer appear more palatable to GUNKEL The collection letter stated that the **<u>"total amount due of $10,030.76 [may be resolved] for the settlement amount of $5,000."</u>** (All emphasis in the original ) If it owned the debt, CAVARLY paid no more than $250 for it

16 GUNKEL declined to accept the settlement offer, as his counsel, attorney Clausen, had readily concluded that CIR and CAVALRY did not have the documentation and witnesses necessary to prove the case at trial and for that reason would voluntarily dismiss the case to avoid a loss at trial and corresponding liability for GUNKEL's attorney's fees pursuant to the attorney's fee clause contained in the underlying Chase credit card agreement (Pursuant to Civil Code section 1717, a plaintiff that voluntarily dismisses a case in advance of trial avoids liability for contractual attorney's fees )

17 In the ensuing proceedings in the underling case, GUNKEL served written discovery on CAVALRY through CIR, including a request for production of documents CAVALRY and CIR provided discovery responses which were intentionally designed to make it falsely appear that CAVALRY had the documentation and witnesses necessary to prove the debt at trial, so that GUNKEL would feel pressured to settle the case on terms favorable to CAVALRY and CIR

18 Five (5) documents were produced to make it falsely appear that CAVALRY and CIR could prove the debt and chain of title (True copies of the documents are attached as Exhibit 4.)

19 The first document is titled "Bill of Sale" and purports to evidence the sale of unidentified debts from Chase Bank to Hilco Receivable, LLC (HILCO) on November 20, 2009 The document is redacted to hide the number of accounts sold (usually 10,000 accounts or more) and the total unpaid balance of the accounts (usually a minimum of $50 million) and the amount

of the purchase price (usually around $5 million – 10% of the total debts sold). The redaction was done to conceal the fact that thousands of accounts were transferred under the Bill of Sale, not just a single account such as that belonging to GUNKEL The Bill of State states that the sale of the accounts occurred pursuant to a Credit Card Account Purchase Agreement to which the Bill of Sale is an exhibit, but that Agreement was not produced by CIR and CAVALRY The Bill of Sale states that the accounts sold to HILCO "are described in Exhibit 1 attached hereto and made part hereof for all purposes" However, no exhibit was attached to the Bill of Sale as produced by CIR and CAVALRY and the missing "Exhibit 1" was not otherwise produced by them

20 The second document produced is also titled "Bill of Sale" and suffers from all of the same flaws as the first document On inspection the two documents appear to be the same They are not. The first Bill of Sale states the accounts sold to HILCO are identified in a file created on May 6, 2010 (which file was not produced by CIR and CAVALRY), which corresponds with the May 7, 2010 date appearing on the signature line for the Chase Bank representative The second Bill of Sale states the accounts sold to HICLO are identified in a file created on June 4, 2014 (which file was not produced by CIR and CAVALRY), which correspondents with the June 5, 2010 date appearing on the signature line for the Chase Bank representative Thus, the two Bills of Sale refer to two entirely separate account transfers which occurred on May 6, 2010 and June 5, 2010, respectively. Obviously, GUNKEL's account with Chase Bank could not have been sold twice by Chase Bank to HILCO Neither Bill of Sale relates to GUNKEL's account with Chase Bank, and none of the documents referenced in the Bills of Sale were produced by CIR and CAVARLY– because they did not have them and could not get them even if they existed [3]

---

[3]The reason they could not get them is that the Account Purchase Agreement (commonly known in the industry as Flow Agreement or Forward Flow Agreement) includes provisions which either prohibit subsequent Assignees from obtaining documents and information concerning the debt, or require them to pay a significant amount of money to the original Seller in order that the Seller will even entertain such inquiries and requests and *try* to locate the requested information and documents and provide them to the Assignee The Agreements commonly also include provisions which require the Purchaser and Assignees to pay the Seller in advance if an officer or employee of the Seller is to appear as a witness at trial at behest of the Purchaser or Assignee While in the global scheme of things these expenses would appear small in comparison to the significant costs normally associated with litigation, limited civil debt collection cases turn the usual scales on their head



21 The third document produced by CIR and CAVALRY is titled "Notice of Name Change" and reflects that HILCO merged with EQUABLE and EQUABLE thereby "succeeded to all of [HILCO's] rights and obligations"– presumably including the debt accounts which HILCO then held The document does not identify any specific assets or accounts which HILCO or EQUABLE then claimed to own and therefore does nothing to establish ownership of GUNKEL's account

22 The fourth document produced by CIR and CAVALRY is titled "Bill of Sale and Assignment of Accounts" and purports to reflect the sale and assignment of unidentified accounts from EQUABLE to CAVALRY Like the first two Bills of Sale, the third Bill of Sale does not list any specific accounts and instead states that EQUABLE has sold and transferred "all of [its] rights, title and interest in and to each of the Accounts identified in the Account Schedule attached hereto as <u>Exhibit A</u>[ ]" (Emphasis in the original ) And, as before, there is no exhibit attached to the Bill of Sale, and "Exhibit A" was not otherwise produced by CIR and CAVALRY The third Bill of Sale is therefore just as defective as the first two It fails to identify any specific accounts sold and therefore does nothing to establish that GUNKEL's account is amongst those sold by EQUABLE to CAVALRY– presuming EQUABLE even owned that account, which cannot be proved from the documents produced by CIR and CAVALRY because the first two Bills of Sale are totally defective for the reasons stated above

23. The fifth document is difficult to describe and even harder to decipher if one is not familiar with the practices of the debt collection industry The document is a redacted computer screen print-out which identifies GUNKEL's account with Chase Bank When, where and by whom the document was purportedly printed is not revealed by the document itself or the

---

because the debts are so small and the purchase prices of the debts are even smaller– making any significant expense appear HUGE in comparison Having purchased a sizeable debt for pennies, or fractions of a penny, on the dollar, debt collection companies are loathe to cut into their profit margin by paying money further "up stream" to the original Seller to get the documents and witnesses they need to prove the case at trial It is almost always better for them financially to use the litigation and prospect of a trial as leverage to try to secure a settlement and to cut-bait and dismiss if that strategy fails, rather than incur expense to obtain necessary documents and procure the attendance of necessary witnesses from the Seller

discovery responses provided by CIR and CAVALARY Also not stated in the document is the date of the alleged transfer of title of GUNKEL's account from the original lender, Chase Bank (which the document lists as "creditor"), to whomever supposedly holds title to the account– be it HILCO, EQUABLE, CAVALRY or some other debt collection company yet to be identified And nothing in the document purports to reflect chain of title of any specific transfer the account, much less all three transfers needed to prove CAVALRY's ownership of the account (1) Chase to Hilco, (2) Hilco to Equable, and (3) Equable to Cavalry

24 On those *extremely rare* occasions when CIR and CAVALRY actually take a limited civil debt collection case to trial, their witness(es) falsely purport to be able to establish the full chain of title of a debt by reference to the documents identified above (as applicable to the specific case in question), and falsely purport to do so based on their own personal knowledge In truth they have no personal knowledge of much of anything concerning the debt– they merely parrot inadmissible hearsay gleaned from the face of documents which neither they nor any other employee of CAVALRY prepared and which simply appear in CAVALRY's file as having been transferred "down stream" along with the purported transfer of the debt That is, Chase purportedly gives documents to HILCO, and HILCO purportedly gives documents to EQUABLE, and EQUABLE gives documents to CAVALRY which appear in its file, and then a CAVALRY employee takes the witness stand and falsely claims to have personal knowledge of the truth and accuracy of each and every one of the documents found in CAVALRY's file as well as all information contained in those documents It is, in sum, a high-stakes version of "the Telephone Game" played by debt collectors with far less reliability and accuracy than the average 3rd grader[4]

25 When, however, CIR and CAVALRY know there is an experienced attorney

[4]As one website accurately describes it: the Telephone Game "is so wildly popular . because of the sheer silliness of the game results [T]ake a bunch of kids and tell them to *quietly* repeat a single phrase to their partner only once[, and so on, until the circle is complete] What you get [from the mouth of the last kid in the circle] is normally [so funny that it produces] hysterical pandemonium " (SchoolParties WorldPress com ) Debt collection witnesses in limited civil cases provide equally unreliable testimony about what their "circle of friends"– Seller to purchaser, purchaser to assignee 1, assignee 1 to assignee 2, assignee 2's employees to other employees— passed on to them, but the result is not at all funny when an alleged debtor loses a case based on such false and unreliable testimony

representing the debtor-defendant, who is versed in the practices of the debt collection industry and is prepared to object to their documents and the testimony of their witnesses, CIR and CAVALRY rarely take limited civil debt collection cases to trial– particularly when, as here, they know they cannot prove the debt and the chain of assignment based on the limited documents they have in their possession (and even more so when they know that *the defense counsel knows that*).

26 On receipt and review of the documents produced by CIR and CAVALRY in the underlying case, GUNKEL's counsel, attorney Clausen, readily recognized that the documents produced were wholly inadequate to prove the debt and the chain of assignment from Chase to CAVALRY, and that numerous documents were missing from the production– such as the Sales or "Flow" Agreements, the various exhibits to the Bills of Sale, etc. Attorney Clausen further recognized that CIR and CAVALRY had produced the documents and provided discovery responses which were intended to make it falsely appear that the debt and the chain of assignment could be proven at trial, in the hope of pressuring GUNKEL to settle a case that CIR and CAVALRY absolutely could not win even if they were prepared to try (which they were not).

27. During the entirety of the 31 months that the underlying case was pending, from August 2012 to April 2015, CIR and its clients– first EQUABLE, then CAVALRY– knew they did not possess the documentation and witnesses necessary to prove the debt at trial, could not obtain the necessary documentation and witnesses through discovery or other means and would not do so even if they could because it would be cost-prohibitive, and did not intend to take the case to trial but instead intended to use the pendency of the litigation as leverage to pressure GUNKEL to settle.

28 GUNKEL did not take the bait and would not pay money in settlement. Predictably, CIR and CAVALRY dismissed the underlying case on April 16, 2015 in advance of trial– as they almost always do when faced with a represented debtor-defendant who refuses to settle a limited civil debt collection case

29. The facts described above are the norm not the exception in limited civil debt collection cases brought by CIR and CAVALRY. Through these unlawful practices, CIR and CAVALRY use defective documents, deceptive discovery responses, false communications and

other means of trickery to make it appear they have "the goods" to prove their case at trial, in order to exert pressure on debtor-defendants to settle, secure in the knowledge that if a settlement is not achieved the case can simply be dismissed pre-trial so that the gross inadequacy and material falsity of the documentation and witness testimony is not shown in court, and so they may avoid liability to the debtor-defendant for contractual attorney's fees based on the attorney's fee clauses found in virtually every credit card and loan agreement nowadays Though a plaintiff's dismissal of a case makes the defendant the prevailing party for purposes of recovering costs under sections 1032 and 1033 5 of the Code of Civil Procedure, a dismissal serves to prevent the defendant from recovering contractual attorney's fees because Civil Code section 1717 provides that there is no prevailing party for purposes of contractual attorney's fees when an action is voluntary dismissed by the plaintiff prior to trial

30 On those occasions where the debtor-defendant is self represented (which is the usual rule in limited civil debt collection cases), or the attorney representing the debtor-defendant is not versed in the shady practices of the debt collection industry, CIR and CAVARLY will frequently proceed to trial if a settlement cannot be had and at trial will put on their defective and false documentation and witness testimony, despite their knowledge that the documents and witness testimony would be found inadmissible if the true facts were known to the court In the vast majority of such cases, CIR and CAVALRY prevail, when they would almost always lose if the true facts were known

31 In this fashion, CIR and CAVALRY have thus far been allowed to "have their cake and eat it too " They have been able to use defective and false documents and witness testimony to secure favorable settlements and undeserved judgments and contractual attorney's fees awards which would not have been secured if the true facts had been known to the court And on those rare occasions where the debtor-defendant or his or her attorney is aware of the true facts and is prepared to object at trial, CIR and CAVALRY have simply dismissed the case prior to trial and thereby avoided judicial scrutiny of their documentation and witness testimony and also avoided liability for the debtor-defendant's contractual attorney's fees

32 By this action GUNKEL seeks a nominal measure of recompense for the false and

misleading and deceptive communications, pleadings and discovery responses by CIR and CAVALRY in the underlying case, which collectively constitute unfair debt collection practices subject to an award of statutory penalties of $100 to $1,000 under the Rosenthal Act, Civil Code section 1788, et seq , and unfair business practices for which injunctive relief is available under the UCL, Business & Professions Code section 17200, et seq

**FIRST CAUSE OF ACTION**

**Violation of the Rosenthal Act**

33 The conduct of defendants in the underlying case as herein-above described constitutes one or more violation of the Rosenthal Act, Civil Code sections 1788 14 and 1788 17, including but not limited to violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U S C section 1692e-f, which are incorporated by reference in the Rosenthal Act at Civil Code section 1788 7

(1) Civil Code section 1788 13(a)– communications with the debtor other than in the name either of the debt collector or the person on whose behalf the debt collector is acting (this occurred in the underlying case when EQUABLE sold its debt collection accounts to CAVALRY sometime in early 2013 but CIR continued to prosecute the underlying case in the name of EQUABLE for about a full year before filing an amended complaint naming CAVALRY as the new plaintiff)

(2) 15 U S C section 1692e(2)(A) – the false representation of the character and amount of the debt (See Ex 2 hereto [reflecting falsely inflated balance due] )

(3) 15 U S C section 1692e(10)– the use of false representations or deceptive means to attempt to collect a debt

(4) 15 U S C section 1692f– use of unfair or unconscionable means to attempt to collect a debt

34 Pursuant to Civil Code section 1788 30(b), plaintiff is entitled to and hereby claims a statutory penalty in such amount as the Court may allow, which may not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000) for each individual violation of the Rosenthal Act by defendants, totaling no more than $3,000 per defendant for a total of $6,000 maximum Plaintiff does not claim statutory damages under the FDCPA on behalf of himself or

the putative class.

**SECOND CAUSE OF ACTION**

**Violation of the UCL (Business and Prof. Code sections 17200, et seq.)**

35. The actions of defendants as described herein-above were undertaken as part of their standard business practices Such actions are unlawful as violative of the Rosenthal Act (Civ Code §§ 1788 et seq ) and Fair Debt Collection Practices Act (15 U.S C § 1692 et seq ), for the non-inclusive reasons identified above in paragraph 33 of this complaint

36. As a result of defendants' unlawful business practices in the underlying case, plaintiff suffered injury in fact and has lost money or property, so as to have standing to seek relief under the UCL on an individual and class action bases.

37. For purposes of this UCL claim, plaintiff does not claim actual damages or statutory damages and penalties under the Rosenthall Act or FDCPA. Rather, he relies on the defendants' violations of the Rosenthall Act and FDCPA as grounds for injunctive relief under Business & Professions Code sections 17200, et seq All of the actions of the defendants as described herein occurred within 4 years of the filing of this action and are therefore within the statute limitations for a UCL claim.

38 Pursuant Business & Professions Code sections 17200, et seq , plaintiff is entitled to an injunction prohibiting the defendants from continuing to engage in the unlawful business practices described herein, so that other individuals like plaintiff will not be subject to the same wrongful conduct and resulting harm in the future.

**CLASS ACTION ALLEGATIONS**

39 Plaintiff has suffered injury in fact and has lost money or property as a result of the unfair debt collection and unlawful business practices of the defendants, so as to have standing to prosecute a class action under the Rosenthal Act and UCL.

40 Plaintiff is informed and believes and thereon alleges that there is a class of individuals similarly situated to him numbering over 1,000 who have been subjected to the same or substantially similar conduct by defendants and have suffered the same or substantially similar harm during the 4 year period preceding the filing of this action and who may be represented on a

class basis for claims brought under the Rosenthal Act and UCL.

41. The nature of defendants' conduct and the harm and damage done to plaintiff and the class is so similar that certification of a class action is appropriate and the Rosenthal Act claim and UCL claim should be permitted to proceed on a class-wide basis. Common factual and legal questions predominate, including defendants' systematic engagement in the unfair debt collection and unlawful business practices described herein at paragraphs 10-11 and 16-31

42 While the precise contours of the putative class will be determined when a motion for class certification is filed, for purposes of general pleading the putative class shall include all individuals who were named as defendants in limited civil debt collection cases brought by CIR and CAVALRY in California in the 4 years preceding the filing of this action and who were (1) served with discovery responses which included documents similar to those attached as Exhibit 3 hereto[5], which are designed to mislead and deceive by making it falsely appear that CIR and CAVALRY have the ability to prove the debt and the chain of assignment; and/or (2) were the subject of a debt collection action brought and continued in the name of EQUABLE long after EQUABLE had sold its debt collection accounts to CAVALRY

43 Under the Rosenthal Act, FDCPA and UCL, it makes no difference whether GUNKLE or any members of the putative class actually owed the debt at issue– the conduct of defendants is still actionable and subject to statutory penalties and injunctive relief.

44 Plaintiff is competent to represent the class because he is over the age of 18 and a resident of the City and County of San Francisco where the Court is located, and he has been subjected to the same conduct and has suffered the same general harm as the putative class members

45. In accordance with Code of Civil Procedure sections 425.17, subdivision (b) and 1021.5, plaintiff brings this action solely in the public interest. Plaintiff does not seek any relief greater than or different from the relief sought for the putative class of which she is a member If

[5]The documents attached as Exhibit 3 are documents commonly produced in discovery by CIR and CAVALRY. Though the particulars of the documents vary from case to case, the substance of the documents is the same as are the factual falsities and other defects found therein.

anything in the complaint can be read to suggest otherwise, plaintiff waives the right to seek any relief greater than or different from the relief sought for the putative class The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons, as the action will deter defendants from violating the Rosenthal Act, FDCPA and UCL in the future for benefit of the putative class and other debtor-defendants in limited civil debt collection cases and for benefit of the public which has a significant interest in enforcement of the Rosenthal Act, FDCPA and UCL Private enforcement is necessary and places a disproportionate financial burden on plaintiff in relation to he stake in the matter To date, no public agency has taken action against the defendants based on the conduct described herein Plaintiff's financial interest is minimal– at most $6,000 based on statutory penalties under the Rosenthal Act– and he will receive no personal benefit as the result of a UCL injunction as he is not likely to be subject to another debt collection lawsuit by CIR and CAVALRY In contrast, plaintiff will incur at least $50,000 in attorney's fees during the course of this litigation– a minimum of 8 times more than his maximum potential recovery– and he will face liability for defendants' attorney's fees if, as expected, they file an anti-SLAPP motion under Code of Civil Procedure section 425 16 and prevail on the motion Defendants' fees for an anti-SLAPP motion would be at least $20,000 for the trial court phase, much more if the ruling on the anti-SLAPP motion is appealed

46 Plaintiff's counsel, Mark T Clausen, is qualified and competent to represent the class Attorney Clausen has over 20 years of legal experience as a law clerk and attorney and has prosecuted dozens of class actions and taxpayer cases [6] Attorney Clausen has 18 published California opinions to his credit to date on various subjects of law, including 2 cases published last year (2014), and has been granted review by the California Supreme Court in 7 cases, including 2 last year which are currently pending before the state high court (See *Dane v City of Santa Rosa*, First Dist , Div 2, A138355 [non pub opinion], review granted November 4, 2014, S221341, *Thompson v Petaluma Police Department* (2014) 231 Cal App.4th 101, *Wheatherford*

---

[6] Like a class action, a taxpayer action under Code of Civil Procedure section 526a may be prosecuted by the plaintiff for benefit of the plaintiff *and other members of the public*

*v City of San Rafael* (May 22, 2014) 226 Cal App 4th 460, review granted September 14, 2014, S219567, *Musaelian v Adams* (2011) 197 Cal App 4th 1251; *Alviso v Sonoma County Sheriff's Dept* (1st Dist , Div 2, 2010) 186 Cal App 4th 198, *Musaelian v Adams* (2009) 45 Cal 4th 512, *City of Los Angeles v 2000 Jeep Cherokee* (2nd Dist , Div 1, 2008) 159 Cal App 4th 1272, *O'Connell v City of Stockton* (2007) 41 Cal 4th 1061, *Hernandez v City of Sacramento,* formerly (3rd Dist 2007) 54 Cal Rptr.3d 98, depublished on grant of review and affirmed *sub nom* based on *O'Connell, supra,* 41 Cal 4th 1061, appeal dismissed, S151356, *Samples v Brown* (1st Dist., Div 2, 2007) 146 Cal App 4th 787, *People v $17,522 08 U S Currency* (6th Cir 2006) 48 Cal App 3d 519, *O' Connell v City of Stockton,* formerly (3rd Dist 2005) 128 Cal App 4th 831, depublished on grant of review and affirmed by *O'Connell, supra,* 41 Cal 4th 1061, *People v Ladesma* (2003) 106 Cal App 4th 857, *Smith v Santa Rosa Police Department* (1st Dist , Div 3, 2002) 97 Cal App 4th 546, *Bjork v Mason* (2000) 77 Cal App 4th 544.

47 At the appropriate time, plaintiff will move for class certification

**INAPPLICABILITY OF THE LITIGATION PRIVILEGE**

48 The claims asserted by plaintiff are not subject to the litigation privilege, Civil Code section 47, because such would defeat the rights and remedies provided by the Rosenthal Act and FDCPA (See *Komarova v National Credit Acceptance, Inc* (2009) 175 Cal App 4th 324 )

**PRAYER**

WHEREFORE, plaintiff GUNKEL prays for relief as follows

1 For certification of the case as a class action as to both the Rosenthal Act claim and the UCL claim, with GUNKEL as lead class plaintiff and his counsel as sole class counsel or lead class counsel

2. For statutory penalties under the Rosenthal Act (Plaintiff does not request statutory damages under the FDCPA )

3 For injunctive relief against defendants' unlawful and unfair business practices, pursuant to the UCL, Business and Professions Code sections 17200, et seq

4 For costs of suit, including attorney fees pursuant to Code of Civil Procedure sections 1021 5 and 1033 5 and Civil Code section 1788 30(c), and as otherwise available by law

5 For such other relief as the law allows and the Court deems just.

Respectfully Submitted,

Date May 22, 2015

By ______________________
Mark P Clausen, Esq
Attorney Plaintiff William Gunkel